## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| COCHRANTON VETERINARY HOSPITAL, | : : : | |
| Plaintiff, | : : | COMPLAINT – CLASS ACTION |
| vs. | : : | JURY TRIAL DEMANDED |
| STERICYCLE, INC., | : : | DOCKET No. 13-71 Erie |
| Defendant. | : | |

### PLAINTIFF'S CLASS ACTION COMPLAINT

Plaintiff Cochranton Veterinary Hospital ("Plaintiff"), by and through its attorneys, individually and on behalf of all others similarly situated, alleges as follows upon personal knowledge as to itself, and as to all other matters upon information and belief, and based upon the investigation undertaken by its counsel.

### INTRODUCTION

1.      This is a class action lawsuit brought against Defendant Stericycle, Inc. ("Defendant" or "Stericycle"), by Plaintiff on behalf of itself and all other similarly situated customers that contracted with Defendant to provide medical and biohazardous waste disposal and related services, and were charged unlawful fees.

2.      Stericycle is a publicly traded company whose 2012 revenues were $1.91 billion.   Its primary business consists of collecting and disposing of medical and biohazardous waste for its customers.  Stericycle serves hospitals, laboratories, physician practices, dental clinics, long-term care facilities, blood banks, veterinarians, and other organizations that generate medical waste or other potentially infectious material.

1

According to its website, Stericycle "maintains the nation's largest network of medical waste transport vehicles, collection sites, and treatment facilities."[1]

3.      As set forth below, Defendant has charged Plaintiff and similarly situated customers automatic price increases (referred to herein as "APIs") and a variety of excessive fees and costs that were not authorized by any agreement of the parties. Plaintiff seeks relief pursuant to the Illinois Consumer Fraud and Deceptive Trade Practices Act, breach of contract, breach of duty of good faith and fair dealing and, alternatively, unjust enrichment.

## THE PARTIES

**The Plaintiff**

4.      Plaintiff Cochranton Veterinary Hospital is a corporation located in Cochranton, Pennsylvania.   Plaintiff contracted with Defendant in October 2009 to provide medical and biohazardous waste disposal services.   Defendant charged Plaintiff fees and costs that were not authorized by any contract.   As a result of the conduct described herein, Plaintiff was injured.

**The Defendant**

5.      Defendant Stericycle is a Delaware corporation with its principal business at 28161 North Keith Drive in Lake Forest, Illinois, 60045.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction of this action pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§1332(d)(2) and (6) because: (i) there are 100 or more class members, (ii) there is an aggregate amount in controversy

---

[1] See http://www.stericycle.com/bio-hazard-waste/red-bag (last visited March 8, 2013)

exceeding $5,000,000.00 exclusive of interest and costs, and (iii) there is minimal diversity because at least one plaintiff and one defendant are citizens of different states. This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

7.      Venue is proper in this judicial district pursuant to 28 U.S.C. §1391 because Defendant transacts substantial business in this district.   Defendant has advertised in this district and has received substantial revenue and profits from its services in this district; therefore, a substantial part of the events and/or omissions giving rise to the claims occurred, in part, within this district.

8.      This Court has personal jurisdiction over the Defendant.  As set forth below, the facts relevant to Plaintiff occurred in substantial part in this district.  As such, Defendant has conducted substantial business in this judicial district.

## STERICYCLE'S EMERGENCE AS THE DOMINANT MEDICAL WASTE PROVIDER IN THE UNITED STATES

9.      After medical waste washed up on several East Coast beaches in 1987, concern over potential health hazards prompted Congress to enact the Medical Waste Tracking Act ("MWTA") of 1988.   Among other things, the MWTA enacted requirements related to the disposal of medical waste.  The medical waste industry was an outgrowth of the MWTA.

10.      Stericycle was founded in 1989.  Stericycle's primary business comprises disposal services for medical and biohazardous waste.   Within the United States, Stericycle "maintains the nation's largest network of medical waste transport vehicles, collection sites, and treatment facilities."

11.     Stericycle's customers are divided into two groups: large quantity generators (LG) and small quantity generators (SG).

12.     Defendant serves approximately 522,000 customers worldwide, of which approximately 16,000 are large-quantity generators (such as hospitals, blood banks and pharmaceutical manufacturers), and approximately 506,000 are small-quantity generators (such as outpatient clinics, medical and dental offices, long-term and sub-acute care facilities, veterinary offices, municipalities and retail pharmacies).   It services both private and governmental entities.

13.     Defendant targets SG customers as a growth area for its regulated waste business.   According to the Defendant's 2011 Annual Report it "believes that when small-quantity regulated waste customers view the potential risks of failing to comply with applicable regulations they value the services that [Stericycle] provide[s]. [Stericycle] consider[s] this factor to be the basis for the higher gross margins that [it has] achieved with [its] small-quantity customers relative to [its] large-quantity customers."

14.     Defendant has significant customer diversification. No one customer accounts for more than 1.5% of Stericycle total revenues, and its top ten customers account for approximately 6% of the company's total revenues.

15.     Stericycle dominates the domestic market for medical waste disposal services.   After going public in 1996, the company went on a buying spree of competitors in the medical waste disposal industry.   As described on its website, "[o]ur medical waste business emerged as the industry leader when we acquired 14 other acquisitions,

including the medical waste division of BFI — the largest provider of medical waste services at that time."[2]

16.     By 2000, Stericycle was ranked 10th among the United States' fastest growing companies by Fortune Magazine.

17.     Stericycle has completed nearly 300 acquisitions since 1993.  It continues to aggressively acquire companies to this day.  On a recent earnings call discussing the company's 2012 second quarter earnings, Richard T. Kogler, Stericycle's Chief Operating Officer and Executive Vice President, stated that "we continue to use our strong free cash flow to drive our growth-through acquisitions. In this quarter, we closed 8 transactions, 3 domestic and 5 international."  In the first quarter of 2012, Stericycle completed 11 such transactions (6 domestic and 5 international).

18.     Over the course of Stericycle's rapid growth, several antitrust regulators commenced actions for Defendant's alleged anticompetitive and monopolistic conduct. Stericycle ultimately settled at least two of these actions.  On April 8, 2011, the Department of Justice and State of New York filed an antitrust action against Stericycle and others that alleged a proposed acquisition by Stericycle would "substantially lessen competition in the provision of infectious waste treatment services in the New York City Metropolitan Area."  That action was also settled.

19.     One of the consequences of Stericycle's rapid growth and large market share was that its customers (and potential customers) had fewer options for competing

---

[2] See http://www.stericycle.com/history (last visited March 8, 2013)

waste disposal services.   This laid the framework for Stericycle's deceptive charging practices described below.

## THE STERICYCLE SERVICE AGREEMENT

20.     Upon information and belief, all of Stericycle's customers are provided with a standardized service agreement called the Stericycle Steri-Safe$^{(SM)}$ Service Agreement ("Service Agreement").   The Service Agreements are boilerplate contracts of adhesion that are drafted entirely by Stericycle.

21.     The Service Agreement is a one to five year fixed price agreement with weekly, monthly or quarterly waste pick-ups.

22.     The Service Agreement automatically renews for "successive terms equal to the original Term."   If the Service Agreement is terminated prematurely, Stericycle reserves the right to recover an amount "equal to fifty percent of the Customer's average monthly charge multiplied by the number of months (including any partial months), remaining until the expiration date of the then current term hereof."

23.     According to Stericycle's 2012 fourth quarter report its revenue retention exceeds 95%.   And over 95% of its revenues are under long-term contracts with automatic renewals.

24.     The Service Agreement establishes, *inter alia,* the charges that Stericycle is authorized to charge its customers.

25.     The Service Agreement memorializes the number of stops per year Stericycle will make at the customer's location, the charge per additional stop, the estimated yearly containers the Defendant will pick up and dispose of from the

customer's location, the Steri-Safe program benefits and the per month charge the customer will pay for these services.

26.     Stericycle reserves the right to unilaterally "adjust the contract price to account for operational changes it implements to comply with documented changes in law, to cover increases in the cost of fuel, insurance, or residue disposal, or to otherwise address cost escalation."

27.     However, Stericycle does not inform its customers that, despite the contract price to which they have agreed, it will automatically add unauthorized fees and surcharges to each invoice.  Upon information and belief, these extra fees and surcharges have no relation to increased fuel, regulatory or other costs.

28.     Stericycle also fails to disclose its intent to implement APIs.

29.     Upon information and belief, at least every nine months the entire periodic service charge is subjected to an automatic 18% price increase, without any correlation to Stericycle's actual business cost increases.

30.     Upon information and belief, Defendant has refunded or credited the accounts of a portion of these monies when confronted by overcharged customers.

31.     Upon information and belief, when customers contact Stericycle at or near the end of the contract with significantly lower price quotes from competitors, Stericycle will initially match or beat the competitors' price to induce the customer to renew its contract with Stericycle.  But, shortly after the customer renews the contract at the negotiated lower price, the undisclosed automatic prices increases described above are once again assessed by Defendant.

## THE FALSE CLAIMS ACT LITIGATION AND PARTIAL SETTLEMENT

32.     On April 28, 2008, Jennifer D. Perez, a former Stericycle employee filed a False Claims Act case under seal in the United States District Court for the Northern District of Illinois against Stericycle on behalf of the United States of America.

33.     On June 28, 2010, Ms. Perez filed under seal an amended complaint to include as plaintiffs the States of California, Delaware, Florida, Illinois, Indiana, Nevada, New Hampshire, New Jersey, New York, North Carolina, Rhode Island, Tennessee, the District of Columbia and the Commonwealths of Massachusetts and Virginia.

14.     Ms. Perez alleged in her amended complaint that Stericycle "has defrauded federal, state and local governments by knowingly or recklessly overcharging its governmental customers and by withholding accurate pricing data from its customers when it agrees to pick up medical waste." Ms. Perez further alleged that "Stericycle fails to inform its customers that despite the contract price it has agreed to, Stericycle intends to and adds unallowable surcharges to each bill, in addition to an undisclosed 18% across the board increase every 9 months."

15.     It is alleged that Ms. Perez "was hired by Stericycle as a temporary employee in 2004, but soon moved into a full time position in the collections department. In that position, [Perez] began to see that Stericycle was overbilling its governmental customers, in many instances in violation of governmental procurement regulations.  In 2006, she was promoted to the position of government specialist, and was put in charge of preventing and resolving disputes with the governmental accounts.  As a result of her work in that position, [Perez] learned that Stericycle does business with units at all levels of the federal, state, and local governments."

8

34.    Ms. Perez alleged that she "discovered that Stericycle was routinely billing all small quantity customers, including government customers, with annual 18% increases, adding surcharges, . . . [and] carried out the practices alleged . . . across the board with almost all of its small quantity customers."

35.    On January 7, 2013 the complaint was unsealed and a partial settlement was approved.   Stericycle agreed to a $2.4 million settlement with the New York Attorney General for improperly overcharging nearly 1,000 New York government entities, including police and fire departments, rescue squads, schools, jails, and hospitals throughout the state.

36.    As part of the settlement with the New York Attorney General, Stericycle agreed to the following:

a.    Stericycle shall not, in the future, apply any APIs to New York Government Customers. Any APIs applied to and paid by New York Government Customers after the period of the covered conduct shall be credited to customer accounts.

b.    Stericycle shall provide New York Government Customers sixty-days' written notice of and the reasons for any proposed future rate increases directed to any such customer, and should that customer who receives such notice object to the pending increase, that customer shall be permitted to opt-out, without penalty, of all remaining contractual obligations, upon thirty-days' written notice to Stericycle.

c.    Nothing in this Agreement shall constitute a waiver of the rights of the State of New York to examine or re-examine the books and records of

Stericycle to determine that no automated price increases have been applied to New York Government Customers.

37.     Significantly, the state and federal False Claims Act claims asserted in the *qui tam* action only sought relief on behalf of governmental agencies that were improperly overcharged.  The New York Attorney General settlement did not provide relief for private entities, such as Plaintiff and other members of the Class.

## PLAINTIFF COCHRANTON VETERINARY HOSPITAL

38.     Plaintiff entered into a written contract with Stericycle on October 21, 2009.  Upon information and belief, the Service Agreement was received and approved by Stericycle in Lake Forest, Illinois.

39.     The Service Agreement included an agreed upon monthly payment of $579.00 for thirteen stops per year.  Any additional stop would be billed at a rate of $417.00 per stop.  The Service Agreement required Plaintiff to submit any and all payments to Defendant in Carol Stream, Illinois.

40.     Despite the agreed upon price in the Service Agreement, Stericycle unilaterally increased Plaintiff's price without notice by 18% on five separate occasions between January 2010 and March 2013.

41.     For example, between January 2010 and March 2012, Plaintiff's price increased from $579.00 - the agreed upon contract price - to $1,033.79.  This aggregate increase of 79% over the agreed upon contract price in only 26 months was the result of compounding three separate 18% price increases.



42.     Plaintiff's June and July 2011 invoices also included a previously undisclosed separate line item for an "Environmental/Regulatory Fee" of $23.78.  That separate line item charge disappeared from the August 2011 invoice.  Instead the August 2011 and all subsequent invoices stated that the current invoice "Includes Steri-Safe OSHA Compliance   (See Next Page For Details)."  However, the "Next Page" simply has a separate line item for an "Environmental/Regulatory Fee" with no amount of the actual fee.

43.     At the end of November 2012, the Plaintiff contacted the Defendant about the excessive price increases.  After Plaintiff complained, Defendant agreed to cut its monthly charge by over 60% in order to retain Plaintiff as a customer.

44.     For the months of January and February 2013, Plaintiff was billed $361.38 per month.  However, by March 2013, Stericycle's monthly charge to Plaintiff had risen

without notice to $425.80 per month, another price increase of almost 18% from the agreed upon monthly contract price.

## CHOICE OF LAW

45.     The "Governing Law" section of the Service Agreement states that "[t]his Agreement shall be governed by and constructed in accordance with the laws of the State of Illinois without regard to the conflicts of laws or rules of any jurisdiction."

46.     Pursuant to this Choice of Law provision and the Restatement (Second) of Conflict of Laws § 187, Illinois law applies to the claims of Plaintiff and the class.

## TOLLING OF STATUTES OF LIMITATION

47.     Any applicable statute of limitations has been tolled by Defendant's knowing and active concealment of its deceptive practices.  Plaintiff and members of the class could not have reasonably discovered the true extent of its overbilling practices until shortly before this class action litigation was commenced.

48.     As a result of the active concealment by Defendant, any and all applicable statutes of limitations otherwise applicable to the allegations herein have been tolled.

## CLASS ACTION ALLEGATIONS

49.     Plaintiff brings this suit as a nationwide class action on behalf of itself and on behalf of all others similarly situated (the "Class") pursuant to FED. R. CIV. P. 23(a), 23(b)(2) and 23(b)(3).   Subject to additional information obtained through further investigation and/or discovery, the foregoing definition of the Class may be expanded or narrowed by amendment or amended complaint.   Plaintiff seeks to represent the following Class:

> All current and former Stericycle customers that were charged unlawful, automatic, excessive and/or unauthorized price increases, and/or other undisclosed fees or surcharges.

This action has been brought and may be properly maintained as a class action for the following reasons:

50. **Numerosity**:  Members of the Class are so numerous that their individual joinder is impracticable.  The number of members in the Class is so numerous as to render joinder impracticable. Upon information and belief, there are hundreds of thousands of class members in the United States.  Upon information and belief, the precise size (and identity and contact information) of the Class can be readily determined from documents and records maintained by Defendant.

51. **Existence and Predominance of Commons Questions of Fact and Law**: Common questions of law and fact exist as to all members of the Class.  These questions predominate over the questions affecting individual Class members.  These common legal and factual questions include, but are not limited to, the following:

   i.  Whether Defendant's practice of charging automatic price increases constitutes an unlawful business practice;

   ii.  Whether Defendant's practice of charging and undisclosed fees constitutes an unlawful business practice;

   iii.  Whether Defendant's actions constituted a breach of contract due to the failure to exercise good faith and fair dealing in charging automatic price increases;

   iv.  Whether Defendant's refusal to notify its customers that they will be charged automatic price increases constitutes an unlawful business practice;

     v.    Whether Defendant was unjustly enriched when it received and retained funds rightfully belonging to Plaintiff and those similarly situated;

     vi.    Whether Defendant violated the duty of good faith and fair dealing in its failure to notify its customers that they will be charged automatic price increases;

     vii.    Whether Defendant violated the duty of good faith and fair dealing in its failure to notify its customers that they will be charged additional previously undisclosed fees;

     viii.    The appropriate nature of class-wide equitable relief;

     viii.    The appropriate measurement of restitution and/or measure of damages to award to Plaintiff and members of the Class.

     ix.    Whether Stericycle should be enjoined from continuing to engage in the unlawful practices alleged herein.

These and other questions of law or fact which are common to the members of the Class predominate over any questions affecting only individual members of the Class.

52.    **Typicality**: Plaintiff's claims are typical of the claims of the Class. Plaintiff and all members of the Class sustained automatic price increases and unnecessary and/or undisclosed fees arising out of Defendant's wrongful conduct. Plaintiff is advancing the same claims and legal theories on behalf of itself and all absent Class members.

53.    **Adequacy**: Plaintiff is an adequate representative of the Class because its interests do not conflict with the interests of the Class that it seeks to represent; it has

retained counsel competent and highly experienced in complex class action litigation; and it intends to prosecute this action vigorously. The interests of the Class will be fairly and adequately protected by Plaintiff and its counsel.

54. **Superiority**: A class action is superior to other available means of fair and efficient adjudication of the claims of Plaintiff and members of the Class. The injury suffered by each individual Class member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct. It would be virtually impossible for members of the Class individually to redress effectively the wrongs done to them. Even if the members of the Class could afford such individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Further, individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

55. Defendant has acted, and has refused to act, on grounds generally applicable to the Class, thereby making appropriate final injunctive relief with respect to the Class as a whole; and

56. In the absence of a class action, Defendant would be unjustly enriched because it would be able to retain the benefits and fruits of its wrongful conduct.

## VIOLATIONS ALLEGED

## COUNT I

## ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT

57.     Plaintiff and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

58.     This count is brought against Defendant pursuant to the Illinois Consumer Fraud 815, ILCS 505/1, *et seq*. ("ICFA").

59.     For purposes of this claim, Plaintiff is both a "person" and a "consumer" as defined under the ICFA.

60.     At all times relevant herein, the ICFA was in effect.  The ICFA prohibits "unfair and deceptive practices."

61.     The complained-of conduct in this case implicates consumer protection concerns, and involves trade practices addressed to the market generally.

62.     Upon information and belief, the complained of conduct related to this claim primarily and substantially emanated from Defendant's principal place of business in Lake Forest, Illinois.

63.      In violation of the ICFA, Stericycle employed deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of material facts, with intent that others rely upon the concealment, suppression or omission of such material facts, including without limitation the following:

      a.   misrepresenting and/or concealing Stericycle's intent to raise prices for its service disproportionate to its costs; and

b.  misrepresenting and/or concealing Stericycle's intent to charge its customers excessive and/or unnecessary fees; and

c.  misrepresenting and/or concealing Stericycle's intent to implement automatic price increases.

64.  Stericycle had actual knowledge of the false, misleading, or deceptive character of its communications and omissions.

65.  This deception occurred in the course of conduct involving trade or commerce, and proximately caused injury to Plaintiff and the Class.

66.  Defendant's violation of the ICFA entitles Plaintiff and members of the Class under the statute to statutory and actual damages, punitive damages, injunctive relief, and attorneys' fees and costs.

67.  The Plaintiff and the Class have suffered and will continue to suffer actual damage as a result of the actions and omissions complained of herein.

## COUNT II

### BREACH OF CONTRACT/ BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING

68.  Plaintiff and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

69.  Plaintiff and Defendant had a valid contract, the essential terms of which are set forth herein.

70.  Plaintiff and the Class members have performed all conditions and promises required by them to be performed in accordance with the terms and conditions of the contract.

71.     In those agreements, Stericycle "reserve[d] the right to adjust the contract price to account for operational changes it implements to comply with documented changes in law, to cover increases in the cost of fuel, insurance, or residue disposal, or to otherwise address cost escalation."

72.     Stericycle breached its contractual duties by charging automatic price increases to its customers. This breach was material.

73.     Stericycle breached its contractual duties by charging unauthorized surcharges and routinely increasing prices charged to its customers that had no relation to its increased business costs.  These breaches are also material.

74.     Under Illinois law, a covenant of good faith and fair dealing is implied in every contract.

75.     Defendant breached and continues to breach the contract (and its duty of good faith and fair dealing) by charging excessive and/or unauthorized price increases and/or fees beyond what is permitted under the express contract.  These breaches are material.

76.     As a direct and proximate result of Defendant's breaches of contract, Plaintiff and the Class have sustained, and will continue to sustain, substantial harm, in an amount to be determined at trial.

## COUNT III

### UNJUST ENRICHMENT

77.     Plaintiff and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein. This allegation is being pled in the alternative to the breach of contract claim pursuant to FED. R. CIV. P. 8(a)(3).

78.     Plaintiff and members of the Class conferred a benefit on Defendant by, *inter alia*, purchasing its services.

79.     Defendant has retained the monies that it acquired from charging Plaintiff and members of the Class unlawful and unauthorized fees and prices increases. Defendant knows of and appreciated this benefit.

80.     Defendant was and continues to be unjustly enriched at the expense of Plaintiff and Class members.  As such, it would be unjust to permit retention of these monies by the Defendant under the circumstances of this case without the payment of restitution to Plaintiff and Class members.

Defendant should be required to disgorge this unjust enrichment.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests, on behalf of itself and members of the Class, that this Court:

A.     determine that the claims alleged herein may be maintained as a class action under Rule 23(a), (b)(2), and/or (b)(3) of the Federal Rules of Civil Procedure, and issue an order certifying the Class as defined above;

B.     award all actual, general, special, punitive, incidental, statutory, and consequential damages to which Plaintiff and Class members are entitled;

C.     award pre-judgment and post-judgment interest on such monetary relief;

D.     grant appropriate injunctive and/or declaratory relief, including, without limitation, an order that requires Defendant to stop: its automatic price increases, charging excessive and/or unnecessary fees to Plaintiff and

Class members and to provide them with the option to terminate their

contract prematurely without penalty;

E.      award reasonable attorney's fees and costs; and

F.      grant such further and other relief that this Court deems appropriate.


Dated: March 8, 2013

                                        Respectfully submitted,

                              By:     /s/ Benjamin J. Sweet
                                      Arthur H. Stroyd
                                      Benjamin J. Sweet
                                      Edwin J. Kilpela, Jr.
                                      Justin Romano
                                      **DEL SOLE CAVANAUGH
                                      STROYD LLC**
                                      The Waterfront Building
                                      200 First Avenue, Suite 300
                                      Pittsburgh, PA 15222

                                      Joseph G. Sauder
                                      Matthew D. Schelkopf
                                      Benjamin F. Johns
                                      **CHIMICLES & TIKELLIS LLP**
                                      One Haverford Centre
                                      361 West Lancaster Avenue
                                      Haverford, PA 19041
                                      Telephone: (610) 642-8500
                                      Facsimile: (610) 649-3633
                                      E-mail: JGS@chimicles.com;
                                              MDS@chimicles.com;
                                              BFJ@chimicles.com

Bruce D. Greenberg
**LITE DEPALMA GREENBERG**
Two Gateway Center
Suite 1201
Newark, NJ 0710
Telephone: (973) 623-3000
Email: bgreenberg@litedepalma.com

Katrina Carroll
**LITE DEPALMA GREENBERG**
One South Dearborn Suite 2100
Chicago, IL. 60603
Phone: (312) 212-4383
Fax: (312) 212-5919
E-mail: kcarroll@litedepalma.com

Michael A. Caddell
Cynthia B. Chapman
Cory S. Fein
**CADDELL & CHAPMAN**
1331 Lamar, #1070
Houston TX  77010
713.751.0400 (phone)
713.751.0906 (fax)
Email: MAC@caddellchapman.com
        CBC@caddellchapman.com
        CSF@caddellchapman.com

Matthew Mendelsohn
**MAZIE SLATER KATZ
& FREEMAN, LLC**
103 Eisenhower Parkway
Roseland, New Jersey 07068
Telephone:  (973) 228-9898
Email: mmendelsohn@mskf.net

*Attorneys for Plaintiff*